# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| CHRISTIAN E. LOEFFLER,<br>    Plaintiff, | )<br>)<br>) |
| v. | )   CAUSE NO.: 2:17-CV-228-JEM |
| NANCY A. BERRYHILL,<br>Deputy Commissioner for Operations,<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Christian E. Loeffler on May 22, 2017, and Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 16], filed December 11, 2017. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On January 23, 2018, the Commissioner filed a response, and on February 19, 2018, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**I.    Background**

On May 21, 2013, Plaintiff filed an application for benefits alleging that he became disabled on March 1, 2004. Plaintiff's application was denied initially and upon reconsideration. On April 29, 2015, Administrative Law Judge ("ALJ") William G. Reamon held a video hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On August 13, 2015, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.    The claimant has not engaged in substantial gainful activity since May 21, 2013, the application date.

2. The claimant has severe impairments: degenerative disc disease of the lumbar spine with L4-5 disc space narrowing and obesity.

3. The claimant does not have an impairment or combination of impairments that meet or medically equal the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

4. The claimant had the residual functional capacity to perform light work, except: never climbing ladders, ropes, or scaffolds; occasionally climbing ramps or stairs; occasionally balance, stoop, crouch, kneel, and crawl. Claimant should avoid concentrated exposure to wetness and vibration. Claimant should have no exposure to unprotected heights, hazardous machinery, or slippery/uneven surfaces.

5. The claimant is capable of performing past relevant work as a Cabinet Assembler, light, semiskilled (SVP-3), as described in the Dictionary of Occupational Titles (DOT) and as performed by the claimant. This work doses not require the performance of work-related activities precluded by the claimant's residual functional capacity.

6. The claimant has not been under a disability, as defined in the Social Security Act, since May 21, 2013, the date the application was filed.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**II.      Standard or Review**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse

only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must

"'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Analysis

Plaintiff argues that the ALJ erred in his evaluation of the report and medical source statement of consultative examining physician Dr. Pithadia. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

On June 27, 2013, Dr. Pithadia performed an examination of Plaintiff and reported, among other things: slow gait, limited range of motion in his spine, straight leg raising test showing significant impairment, inability to walk on toes or heels, inability to squat, significant limitation in ability to walk heel to toe level, and pain during the examination. He diagnosed Plaintiff with sciatica and opined that he would be unable to walk for more than a couple hundred feet, would be unable to bed and pick up objects from a floor on a repetitive basis, and would have difficulty lifting objects weighing more than 15 pounds.

The ALJ stated that he gave "little weight" to most of Dr. Pithadia's opinion because it "was not based on recent radiology tests," and more recent x-rays "showed stability in the claimant's degenerative disc disease." Despite this discounting of most of the opinion, the ALJ did give "great weight" to the portion of Dr. Pithadia's statement indicating that Plaintiff should be able sit and

4

stand without difficulty. He pointed out the inconsistency between that statement and Dr. Pithadia's notation that Plaintiff needed to prop himself up while sitting, but instead of explaining how he resolved the inconsistency, contacting the physician for clarification, ordering additional medical tests, or explaining how that portion of the opinion was supported by the medical evidence, the ALJ chose to give weight only to the portion of the opinion indicating fewer limitations. *See Hughes v. Astrue*, 705 F.3d 276, 277–78 (7th Cir. 2013) (finding error where the ALJ "disregarded [the examining physician]'s entire report, on the unexplained ground that it was 'not consistent with the medical evidence of record' and 'seem[ed] to be based solely on the [applicant's] subjective complaints.' The judge did not indicate what 'medical evidence of record' he had in mind and he ignored the fact that [the physician] had conducted a 90–minute examination of the applicant"); *see also Roddy*, 705 F.3d at 637 ("The ALJ should have, but did not, explain why [a physician]'s opinion about the severity of [the plaintiff]'s pain is inconsistent with [the medical] findings.").

The ALJ's analysis leaves the Court unable to follow the logic from the medical source statement to the ALJ's decision to give weight to only part of that opinion. The ALJ discounted the portions of Dr. Pithadia's opinion that specified Plaintiff's difficulties with lifting, repetitive bending to pick up objects, and walking, all of which are inconsistent with the ALJ's finding that Plaintiff can perform light work. The only reason the ALJ gave for discounting these findings was the results of a more recent x-ray, but, as Plaintiff points out, "stability" in that context does not mean that his back was improving, merely that it was not getting worse. This demonstrates at least a lack of understanding of the medical evidence, but leads to the concern that the ALJ is substituting his own medical judgment for that of the physician hired to perform the examination, in violation of the Seventh Circuit Court of Appeals' repeated warning that ALJs are not to make their own

5

independent medical findings and should not "succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong.*" Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (citing cases); *see also, e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). It appears that the ALJ cherry-picked the record, choosing to give weight to only the portions of Dr. Pithadia's assessment that comport with his RFC conclusions and failing to thoroughly evaluate the records that do support the physician's findings. *See, e.g., Kaminski v. Berryhill*, 894 F.3d 870, 874-75 (7th Cir. 2018); *Gerstner v. Berryhill*, 879 F.3d 257, 261-63 (7th Cir. 2018).

Compounding the Court's concern with the ALJ's dismissal of most of Dr. Pithadia's opinion is that the only opinions to which he gave weight were those of non-examining agency physicians who reviewed Plaintiff's medical records. ALJs are directed to "give more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [him]." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Likewise, "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel*, 345 F.3d at 470 (finding error where "the ALJ did not explain how the evidence in the record contradicts [the examining physician]'s diagnosis"); *see also Vanprooyen v. Berryhill*, 864 F.3d 567, 572–73 (7th Cir. 2017) (finding error where "without any logical explanation, the administrative law judge gave substantial weight to the opinions of consulting physicians who had never examined [the plaintiff], saying only that they had provided "a good synopsis of the evidence" and that "their opinions are consistent with the overall record"); *Aurand v. Colvin*, 654 F. App'x 831, 837 (7th Cir.

2016) ("[T]he problem is that the ALJ has not pointed to any logical reason to discount the opinions of the only examining mental-health professionals, one of whom was the state agency's own consultative examiner, in favor of a non-examining reviewer."). Not only did the agency physicians not examine Plaintiff, but their opinions were drafted before the most recent MRI of his spine. The ALJ discounted the opinion of the examining physician because it was made without the benefit of recent imaging studies, but gave weight to the opinions of non-examining physicians, even though they were also lacking that apparently-crucial information. Furthermore, the ALJ does not include in his opinion analysis of any reports of any physicians addressing the results of the MRI and what its results mean about Plaintiff's likely pain and work-related limitations.

In addition to discounting the medical opinion of the examining physician for lack of recent radiology tests, the ALJ also discounted Plaintiff's reported limitations because he only sought conservative treatment. However, when failure to comply with medical treatment recommendations is used as a factor in determining whether a claimant's statements regarding his symptoms are to be believed, an ALJ is required make a determination about whether the lack of treatment is justified and develop the record accordingly. *See* SSR 96-7p, 1996 WL 374186, at *7 (Jul. 2, 1996)[1]; *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ 'must not draw any inferences' about a

---

[1] The Court notes that Social Security Ruling 96-7p has been superseded by Social Security Ruling 16-3p, 2016 WL 1119029 (Mar. 16, 2016), which applies when the ALJs "make determinations and decisions on or after March 28, 2016" but that Social Security Ruling 96-7p governs cases decided before that date. See Notices, Social Security Ruling 16-3p, 2017 WL 4790249 (Oct. 25, 2017).

claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p). In this case, the record indicates that Plaintiff reported inability to pay for medical care, but the ALJ did not ask at the hearing about why he did not seek more treatment, nor did he identify any treatment that was prescribed but which Plaintiff did not undergo. In addition, despite the fact that Plaintiff reported needing to use a cane to walk more than short distances and his use of an assistive device at the hearing, the ALJ concluded that he did "not find any support for the alleged required assistance for ambulation or balance" and therefore did not include use of a cane in the RFC or credit Plaintiff's reported limitations in walking. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription."); *see also* SSR 96-7p, at *8 ("The individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms."). The ALJ's failure to credit Plaintiff's cane use, as well as his apparent misapprehension of the "stability" of Plaintiff's degenerative disc disease, leave the Court unable to follow the ALJ's reasoning between the evidence and the RFC.

Although medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner*, 627 F.3d at 618. The ALJ failed to build that logical bridge in this case, leaving the Court unable to follow the reasoning behind the ALJ's conclusion that the opinion of Dr. Pithadia was not entitled to weight but the opinions of the state

agency non-examining physicians were, despite being based on less information. On remand, the ALJ is directed to thoroughly address the medical evidence in the record, including properly weighing the reports of examining physicians in accordance with the regulations, and to obtain additional information as needed. *See, e.g., Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996)); 20 C.F.R. §§ 404.1512(d)(1), 416.919(b)). The ALJ is also directed to thoroughly explain how claimed limitations are either incorporated into the RFC or found to be unsupported.

**IV.     Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 16] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 9th day of August, 2018.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc:     All counsel of record